UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEAN ZAWLOCKI, GARY LONG, MICHAEL VESPA, RICHARD JOHNSON, DEBORAH KETCHNER, JAMIE COLLIER, HERMAN GERHARD, PAUL RINKE, JAMES BEDWORTH, GARY MULZER, DOUGLAS GENTRY, JAMES SANDEEN, MEL PATTON, DEREK HINES, JEFFREY VINSON, RUSSELL ALLES III, EUGENE HRYNEWICH, ENRIQUE SALDANA, MICHAEL BBABYAK, RON PEARSON, J. MICHAEL SABATINI, LARRY PLANTRICH, for themselves and as class representatives,

CASE NO. 03-60159

HON. MARIANNE O. BATTANI

          Plaintiffs,

v.

RAMA TECH, LLC, a Michigan limited liability company, RAMA TECH, LLC MEDICAL PLAN, RAMA TECH INDUSTRIES, LLC, a Delaware limited liability copany, RAM THULURI, RANI THULURI, and NUKO PRECISION, LLC, a Michigan limited liability company, and COMERICA BANK, a Delaware corporation,

          Defendants
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Before the Court are Defendants Ram Thuluri, Rani Thuluri and Nuko Precision, LLC's Motion for Summary Judgment (Doc. # 79). The Court heard oral argument on June 13, 2005. At the conclusion of the hearing, the Court took the matter under advisement.[1]

---

[1] The Court also heard argument on Comerica Bank's Motion to Dismiss under Fed.R.Civ. 12(c) or for Summary Judgment under Fed.R.Civ.P. 56(b), which the Court resolves by separate opinion and order.

1

For the reasons stated below, the Court GRANTS Defendants' motion.

## I. STATEMENT OF FACTS

Plaintiffs filed this class action after their former employer, Defendant Rama Tech LLC ("Rama Tech"), failed to pay benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1) (Count I), and closed without giving layoff notice as required by the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101 et seq. (Count II). Rama Tech, a limited liability corporation, manufactured auto parts. Defendant Rani Thuluri was its sole member; Defendant Ram Thuluri was its Chief Executive Officer until mid-2002, when Greg Bird was hired. Defendant Nuko Precision, LLC ("Nuko") is a small business started by the Thuluris some time after Rama Tech closed its machine shop and terminated employees on December 19, 2002.

It is undisputed that during 2002, Rama Tech began experiencing financial difficulties. Consequently, its secured lender, Defendant Comerica Bank ("Comerica"), exercised certain rights under their loan agreement, one of which required Rama Tech to hire a workout consultant. Bird signed a contract with workout specialist, Conway, McKenzie & Dunleavy ("CM&D") in the Fall of 2002.

From October 2002, through the date it closed its doors, Rama Tech, CM&D, Comerica, and Rama Tech's five largest customers, Delphi, GM, Visteon, Ford, and Daimler Chrysler, were working to forge an agreement to allow Rama Tech to continue in business. Nevertheless, on December 18, 2002, at the end of a meeting involving these entities, after each customer agreed to a six-month extension, Comerica refused to extend

any further credit to Rama Tech. According to Ram Thuluri, he was told to "shut down the company," and he did. Defs.' Ex. 1, Decl. of Thuluri at ¶ 13.

At the time operations ceased, a self-funded ERISA-governed medical plan, the Rama Tech, LLC Medical Plan ("Plan") was in effect. Employees paid a portion of the costs of the Plan through payroll deductions. Every month Rama Tech, the Plan Sponsor, paid an administrative fee to American Medical Security ("AMS"), who handled claims under the Plan. AMS then advised Rama Tech of the amount of employee claims that had to be paid, and Rama Tech funded the payment of the claims. This arrangement continued through November 2002. After Rama Tech's check for AMS's administrative fee for December 2002, was returned for nonsufficient funds, AMS canceled its contract with Rama Tech. When Rama Tech's operations ceased, a number of healthcare claims remained unpaid.

At the time it closed its doors, Rama Tech had work in progress for its major customers. Comerica allowed Rama Tech to process its remaining work and ship parts to the customers who paid for them. This reduced Rama Tech's debt to the Bank. The winding down process continued for approximately three months, until March 2003.

Thereafter, Ram and Rani Thuluri started Nuko, a small, limited liability machining company. Defs.' Ex. 1 at ¶ 15. Plaintiffs contend Nuko began operations in January 2003; Defendants claim it began operating in April 2003. Id. Nuko purchased equipment, less than five percent of Rama Tech's assets, in an arms' length transaction for fair market value from Comerica. Id. at ¶ 17. Nuko also hired a few, former employees of Rama Tech. Ten of the 220 employees who worked for Rama Tech on its last day of operation have been employed by Nuko. Id. at ¶ 18. Ram Thuluri is the manager of Nuko; Rani Thuluri is employed there. Nuko machines parts for two of Rama Tech's customers; however the

3

parts are different than those machined by Rama Tech. Id. at ¶ 19. It does no work for GM, Delphi, Visteon, Ford, or DaimlerChrysler. Id. According to Ram Thuluri, funds were not commingled and Nuko maintained separate facilities, equipment and records. Id. at ¶ 25.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. Proc. 56(c), a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists. To avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial. Anderson, 477 U.S. 242. The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case. Celotex v. Catrett, 477 U.S. 317, 325 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the nonmoving party, but may weigh competing inferences for their persuasiveness. Matsushita, 475 U.S. at 574.

## III. ANALYSIS

Plaintiffs' claims against these Defendants arise under two statutes: ERISA and

WARN. The Court discusses the arguments raised pursuant to each below.

### A. ERISA

Under ERISA, an employer is obligated to make contributions pursuant to the terms of the plan. An employer is defined as "any person acting directly as an employer, or indirectly in the interest of any employer, in relation to an employee benefit plan; and includes a group or association of employees acting for employer in such capacity. 29 U.S.C. § 1002(5). The statute includes individuals in the definition of persons; see 29 U.S.C. § 1002(9), thus, Thuluris are not precluded from liability by virtue of their status as individuals. Similarly, courts have concluded that employer may include successor companies. The Court examines the potential liability of Defendants below.

#### 1. Liability of individual Defendants as employers

The parties dispute the liability of the individual Defendants, Ram and Rani Thuluri. The Thuluris maintain that Rama Tech established the Plan, and observe that the Plan contains no provision requiring the individual Defendants to pay if Rama Tech failed to do so. Thus, they conclude that Rama Tech alone is obligated to pay. Plaintiffs contest Defendants' conclusion, arguing that the Thuluris are obligated to pay under a piercing the veil theory.

Under Sixth Circuit law, to hold a corporate officer liable for unpaid ERISA contributions, the corporate veil must be pierced. Scarborough v. Perez, 870 F.2d 1079, 1084 (6th Cir. 1989) (holding that the corporate veil between the employer obligated to make plan contributions and the controlling owner/chief executive officer may not be pierced without a showing of fraud or injustice separate and apart from the corporation's

failure to pay its debt).  Accord  Legit v. Ingersoll Ramd Financial Corp., 874 F.2d 1186, 1193 (7th Cir. 1989) (examining the issues of whether and when a corporate "insider" counts as an "employer" under ERISA, and is therefore responsible for the firm's pension and welfare obligations, and holding that they are not in the absence of veil piercing). Thus, "An officer who does not make a contractual commitment to a pension or welfare plan still could be personally liable, to the extent he is liable for general corporate debts under state corporate law. . . ." Legit, supra, 874 F.2d at 1194.  The specific factors a court may consider in assessing whether the corporate veil must be pierced "include, but are not limited to:  undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." NLRB v. Fullerton Transfer & Storage, Ltd., 910 F.2d 331, 340 n.13 (6th Cir. 1990). A company's failure to pay all of its debt when it ceases operations is not the type of injustice for which a corporate veil is pierced.  Id. at 341 (citation omitted).  That is true even if the debts involve ERISA obligations.  Scarborough, 870 F.2d at 1084.

Plaintiffs allege two grounds to support their position that the corporate veil must be pierced:  (1) Rama Tech was operated solely for personal benefit of the individual Defendants;  and (2) fraud occurred during the liquidation of Rama Tech's machinery and equipment.

There is no evidence advanced in support of the first basis.  To the contrary, the Court observes that if the Thuluris were operating Rama Tech solely for their personal benefit, they would not have personally guaranteed Rama Tech's loans.

As support for their second allegation, Plaintiffs cite to the Deposition of Jeffrey

6

Parilla, the account officer Comerica assigned to handle the liquidation of Rama Tech. Pl.'s Ex. K, Parilla Dep. at 61, 125. Parilla testified that it was his responsibility to get "full repayment of the debt owed to Comerica Bank by the borrower." Id. at 56. Parilla was also assigned to work as the account officer for Nuko Precision. Id. at 61. According to Parilla, he was "initially the officer on Nuko because Ram had moved some equipment out of Rama Tech, put it in a new building in Livonia and started this new business, Nuko." Id. at 125. Ram Thuluri needed a new company in order to repay the loan to Comerica. Id. Comerica agreed that some of the debt from Rama Tech would be moved over to be serviced by Nuko." Id. Plaintiffs also rely on an exhibit suggesting that Comerica "believed that Ram Thuluri was using employees on Rama Tech payroll, funded by Comerica, to run production for Nuko. See Pls.' Ex. R.

The Court notes that Comerica's belief does not constitute evidence. Further, Parilla testified that he investigated whether employees working for Rama Tech were running production for Nuko and that he found no evidence. Defs.' Reply, Ex. 4 at 129.

Plaintiffs have provided insufficient factual support to meet their burden to show a genuine issue of material fact as to whether Defendants should be deemed employers under a piercing the veil theory. There is no compelling evidence on the factors considered by the courts in assessing whether the corporate veil should be pierced. Moreover, the Thuluris' testimony, that they kept personal funds, assets and expenses separate and that corporate formalities were honored, is undisputed. See Defs.' Ex. 1 at ¶¶ 22, 23. Accordingly, the Court concludes that the individual Defendants are not employers for purposes of ERISA and are not liable for unpaid contributions. The Thurulis are entitled to summary judgment on this issue.

### 2. Successor liability

The next issue presented to the Court is whether Nuko can be subjected to successor liability under ERISA. Nuko maintains it is neither a successor nor alter ego of Rama Tech. Plaintiff asserts that genuine issues of material fact exists as to Nuko's liability under ERISA.

In determining whether a new company is a successor to the old, the focus is on the totality of the circumstances of a given situation. Factors such as whether the new company has "acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." Golden State Bottling Co. v. NLRB, 414 U.S. 168, 184 (1973) (analyzing successor liability for purposes of labor obligations). Under this approach, factors examined include: "Whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers." Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1987) (discussing successor employer's obligation to bargain with the union). No one factor is dispositive. Id.

After Ram and Rani Thuluri shut down Rama Tech, they formed Nuko Precision. Again, Plaintiffs rely in part on the fact that Comerica assigned the same account officer that handled the liquidation of Rama Tech as loan officer for Nuko. Plaintiffs contend that Parilla became a loan officer for Nuko because Ram Thuluri moved equipment out of Rama Tech during the liquidation process and put it in a new building in Livonia to form Nuko. Pls.' Ex. K., Padilla Dep. at 125. Nuko started with equipment, employees and customers

of Rama Tech. It even had the same manager. It is not a distinct entity and should be liable under ERISA.

At the outset, the Court notes that the involvement of the same loan officer with both companies is immaterial to the analysis. Although Plaintiffs suggest that Nuko was the recipient of Rama Tech's equipment, the record supports only that a few pieces of equipment were purchased at arms length. Defs.' Reply Ex. 5. The percentage of assets Nuko purchased from Rama Tech was less than 5%. Moreover, the evidence shows that Nuko leased equipment from another source. Id. Given that the focus is on whether there is "substantial continuity" between the enterprises, the Court concludes, as a matter of law, that Nuko is not a successor to Rama Tech. None of the factors weigh in favor of finding liability. Nuko has only ten employees compared to a workforce of 220 for Rama Tech. Nuko does not do any work for Rama Tech's five major customers. Only two of Nuko's customers were customers of Rama Tech, and Nuko does not provide the same parts as Rama Tech did for those customers. Nuko did not assume any contract, liabilities or work of Rama Tech. Neither the facts nor caselaw support Plaintiff's position, and the Court finds that Nuko cannot be held liable under ERISA as a successor to Rama Tech.

### 3. Breach of Fiduciary Duty

Plaintiffs did not allege a claim for breach of fiduciary duty in their original or amended complaint. Plaintiff merely brought a claim for benefits. In their motion, however, Plaintiffs allege that the Thuluris' course of conduct shows they used the Plan assets to further their own interest to the detriment of Plan members. Even if this claim were pleaded properly, Plaintiffs have not advanced any facts to support imposition of fiduciary status upon the Thuluris.

For purposes of ERISA, Congress provided that a person is a fiduciary with respect to a plan to the extent: "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so; or, (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Congress intended ERISA's definition of fiduciary "to be broadly construed." Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987). "Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993). For example, in Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992), cert. denied 506 U.S. 1081 (1993) (citations omitted), the court emphasized that fiduciary duty under ERISA is not an all-or-nothing concept: that is, the inclusion of the phrase "to the extent" in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition. The statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue.

In determining whether a person is a fiduciary with respect to the particular activity at issue, a court is required to examine the relevant documents to determine whether the conduct at issue was within the formal allocation of responsibilities under the plan documents and, if not, ascertain whether, in fact, a party voluntarily assumed such responsibility for the conduct at issue. Coleman, 969 F.2d at 61. Where, for example, an

employer is entrusted with employee funds for remittance to a claims administrator, along with any employer contributions, the employer is acting in a fiduciary capacity under ERISA. Phelps v. C.T. Enterprises, Inc., 394 F.3d 213, 219 (4th Cir. 2005) (citation omitted). Notably, courts have imposed personal liability under ERISA. See Yeseta v. Baima, 837 F.2d 380 (9th Cir. 1988) (an employee in charge of plan administration, who, at the direction of company principals, withdrew plan assets, and placed those assets in the company's account to pay "necessary operating expenses" held personally liable as a fiduciary under ERISA); Connors v. Paybra Mining Co., 807 F.Supp. 1242, 1246 (S.D.W.Va. 1992) (company officers and directors exercised authority or control respecting management or disposition of plan assets, and thus were ERISA fiduciaries where they made "personal, conscious choices" to use withheld employee contributions to cover company expenses), appeal dis'd, 21 F.3d 421 (4th Cir. 1993); Reich v. Cook, 94cv2069, slip op. at 10-11 (D.Conn. Mar. 24, 1997) (defendants fell within the ambit of section 1002(21)(A) where, even though other employees processed checks for their signature, they were the only signatories on the corporate account, and they "retained the authority to instruct those employees as to what checks to process and what monies were to be paid out[ ]").

Hence, under governing case law, the Court must ascertain whether either of the individual Defendants exercised discretionary authority over the payroll deductions and payment of claim to AMS. The evidence demonstrates as a matter of law that they did not.

First and foremost, the Court observes that neither Plaintiffs nor these Defendants suggest that Thuluris were in control of Rama Tech in the latter part of 2002. The sole basis upon which Plaintiffs build their argument is a portion of Ram Thuluri's deposition

11

testimony, wherein he stated, "Well, every bit of funding or any aspect that happened at Rama Tech went through me. It had–because in the end, it meant it was–I personally guaranteed $5.6 million for Rama Tech, so did my wife. So you know in the end, at the end of the day, everybody came–I was involved in some shape or fashion." Pls. Ex. M, Dep. of Ram Thuluri at 19. Plaintiffs read this testimony to support their assertion that the Thuluris allowed Plaintiffs' payroll deductions for benefits to be merged into a cash collateral account and used to pay off the loan to Comerica instead of being applied to Plaintiffs' medical plan. The Court disagrees.

The evidence shows that after Ram Thuluri stepped down as CEO in May 2002, long before payments to AMS were not made, financial decisions were left to new management. There is no evidence that Ram Thuluri made any decisions regarding benefit claims or funding. The cited testimony was given relative to Ram's role in making a request to Comerica for funding for Rama Tech's operations, it was not given relative to the Plan. Thus, his statement does not evidence discretion or control over the Plan and its administration. Although the Thuluris personally guaranteed Rama Tech's debts with Comerica, the undisputed evidence before this Court is that in November 2002, Rama Tech could not issue a check without prior approval by Comerica. Defs.' Reply, Ex. 3 at ¶ 9. Rama Tech, through CM&D, sent a list of creditors with checks to Comerica for approval. Id. CM&D then informed Rama Tech which checks were approved. Id. Further, Ram Thuluri's assertion that he sought Comerica's approval to pay AMS, and had received it, is unchallenged. See id. at ¶ 10. Because there is no evidence that the Thuluris had control over determining which of the company's creditors would be paid or in what order, the facts do not support Plaintiffs' belated attempt to recover benefits through a breach of

fiduciary duty claim. Accordingly, the Court grants summary judgment on this claim.

**B. WARN**

Under WARN, covered employers are required to give written notice of an impending plant closing or mass layoff no less than 60 days before the action is taken. 29 U.S.C. § 2102(a). The purpose of the Act is to extend protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." 20 C.F.R. § 639.1(a).

There is no dispute that Rama Tech was a covered employer. Defendants claim that they are not employers for purposes of WARN and that even if they were, an exception to the requirement to warn applies here. The Court assess the merits of Defendants' arguments below.

### 1. Unforseen business circumstances exception

The unforeseeable business circumstance exception reduces or eliminates the sixty day notice requirement, provided the closing is "caused by business circumstances that are not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A). The Department of Labor has promulgated regulations interpreting the "not reasonably foreseeable" language. The regulations provide:

> (b) The "unforeseeable business circumstances" exception under section 3(b)(2)(A) of WARN applies to plant closings and mass layoffs caused by business circumstances that were not reasonably foreseeable at the time that 60-day notice would have been required.

13

> (1) An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control. A principal client's sudden and unexpected termination of a major contract with the employer, a strike at a major supplier of the employer, and an unanticipated and dramatic major economic downturn might each be considered a business circumstance that is not reasonably foreseeable. A government ordered closing of an employment site that occurs without prior notice also may be an unforeseeable business circumstance.
>
> (2) The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment. **The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of its particular market.** The employer is not required, however, to accurately predict general economic conditions that also may affect demand for its products or services.

20 C.F.R. § 639.9(b) (emphasis added).

"The commentary refuses to classify certain types of circumstances as *per se* unforeseeable and suggests that courts examine each case on its own merits to determine whether the employer in the exercise of 'commercially reasonable business judgment' could have foreseen the particular circumstances that caused the closing." Hotel Employees & Rest. Employees Int'l Union Local 54 v. Elsinore Shore Assocs., 173 F.3d 175, 180 (3d Cir. 1999); see also Loehrer v. McDonnell Douglas Corp., 98 F.3d 1056, 1060 (8th Cir. 1996) ("In formulating regulations interpreting [the unforeseeable business circumstances] exemption, the [DOL] was reluctant to list examples of events that would, without deviation, qualify as unforeseeable business circumstances. Rather, the DOL indicated that the propriety of utilizing the exception in any particular scenario involves a highly factual inquiry to be assessed on a case by case basis.") (citations omitted). The regulations, however,

do suggest that circumstances that are "sudden, dramatic. . . unexpected. . .[and] outside of the employer's control" generally fall within this exception. 20 C.F.R. § 639.9(b)(1).

According to Defendants, Rama Tech was closed as a direct result of the sudden and unexpected actions taken by Comerica on December 18, 2002.  Until that day, Rama Tech had conducted business as usual, and all parties believed it would continued to do so.  Rama Tech's major customers had agreed to an additional six-month extension of contracts; however, Comerica would not extend further credit to Rama Tech unless the customers committed to an eighteen-month agreement.  Not all of the customers were willing to do so.  Defendants conclude that Comerica is responsible for closing Rama Tech.[2]

Plaintiffs contend that questions of fact exist as to whether the exception should be applied. They maintain that there was nothing sudden or unexpected here; no customer pulled out, in fact, customers agreed to continue doing business with Rama Tech for another six months.  Moreover, Rama Tech had been in a working capital crisis for some time and in default to Comerica for years.   A liquidation analysis had been prepared as early as October 31, 2002.  Therefore, Plaintiffs conclude, any assertion that the closing could not have been unforeseen is disingenuous.

The Court agrees with Plaintiffs.  The absence of a full factual development of what occurred between Comerica, Rama Tech and the Thuluris from October 2002 through

---

[2]Comerica insists it did not order Ram Tech to close; it merely refused to extend further credit.  According to Comerica, that decision led to the decision by Greg Bird, who had taken over as President of Rama Tech,  to close.  See Comerica's Ex. P (e-mail from Rama Tech stating, "absent an agreement or extension otherwise, we will terminate work force").

December 19, 2002, precludes summary judgment on this basis.

### 2. Individual liability

The parties contest whether the Thuluris can be held individually liable under Warn, which imposes liability on "employers." A review of the statute, its applicable regulations and its legislative history indicate that "employer" does not include individual persons. Nevertheless, Plaintiffs argue that the facts in this case provide ample grounds for piercing the corporate veil, and that once the veil is pierced, the Thuluris can be individually liable under WARN.

Pursuant to WARN,

> (1) the term 'employer' means any business enterprise that employs–
>
>> (A) 100 or more employees, excluding part-time employees; or
>>
>> (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime).

29 U.S.C. § 2101(a)(1). WARN authorizes the Secretary of Labor (the "Secretary") to promulgate regulations necessary to carry out its provisions (see 29 U.S.C. § 2107 [a] ). In this regard, the Secretary has provided as follows:

> The term 'employer' includes non-profit organizations of the requisite size. Regular Federal, State, local and federally recognized Indian tribal governments are not covered. However, the term 'employer' includes public and quasi-public entities which engage in business (i.e., take part in a commercial or industrial enterprise, supply a service or good on a mercantile basis, or provide independent management of public assets, raising revenue and making desired investments), and which are separately organized from the regular government, which have their own governing bodies and which have independent authority to manage their personnel and assets.

(20 C.F.R. § 639.3)

In addition, the Senate-House Conference Report which accompanied the WARN

16

legislation stated as follows:

> 'Employer'. The Conference Agreement retains the Senate Amendment language that the term 'employer' means a business enterprise. The Conferees intend that a 'business enterprise' be deemed synonymous with the terms company, firm or business, and that it consist of one or more sites of employment under common ownership or control. For example, General Motors has dozens of automobile plants throughout the country. Each plant would be considered a site of employment, but as provided in the bill, there is only one 'employer'--General Motors.

(House Conf.Rep. No. 100-576, 100th Cong., 2nd Sess., 1045, 1046 [reprinted in 5 U.S.Code Cong. & Admin.News [1988], 2078, 2079].

Further, several courts have held that WARN does not apply to individuals. For example in Cruz v. Robert Abbey, Inc., 778 F.Supp. 605 (E.D.N.Y. 1991), the court determined that the inasmuch as Congress defined "employer" as a "business enterprise," it intended a "business enterprise" to mean a corporate entity--i.e. corporation, limited partnership, or partnership--not an individual. See also Solberg v. Inline Corp., 740 F.Supp. 680, 685 (D.Minn.1990) (recognizing "that WARN is a remedial statute and must be construed broadly," but nonetheless holding that "such a view does not counsel a court to disregard entirely the plain meaning of the words used by Congress").

Even assuming that individuals could be subject to liability as employers under WARN, the Court already has found that the record does not support piercing the corporate veil. To the contrary; there are no facts in this record creating even an inference that Thuluris engaged in conduct warranting a piercing of the corporate veil. Therefore, the Court finds as a matter of law that Thuluris are not employers for purposes of WARN, and the claim against them must be dismissed. Accordingly, the Court grants summary judgment to the Thuluris on this basis.

### 3. Successor liability

In support of their assertion that genuine issues of material fact exist as to whether successor liability exists in the context of WARN, Plaintiffs rely on <u>McCaffrey v. Brobeck, Phleger & Harrison</u>, No. C 03-2082-CW, 2004 WL 345231 (N.D. Cal Feb. 17, 2004). The Court has reviewed <u>McCaffrey</u> and finds it unpersuasive for two reasons. First, it is an unpublished opinion from a district court; second, the facts are easily distinguished from the facts of the case at bar.

Specifically, in <u>McCaffrey</u>, the plaintiffs, who were former employees of a law firm, were terminated after a partnership was dissolved. They filed suit because a new legal entity was formed that included former partners and associates and staff members with offices in the same space, the same furniture, equipment, and personal property, the same contractual agreements, the same internal documents management system, and access to the former law firm's client files. Given these facts, the district court denied summary judgment to the defendants finding genuine issues of material fact existed as to whether successor liability should be imposed.

<u>McCaffrey</u> presents no basis upon which this Court should digress from the analysis rendered on the issue of successor liability under ERISA. More specifically, the same factors are assessed in determining successor liability under WARN and ERISA. Those factors do not raise even an inference supporting a finding that Nuko should be subject to successor liability. Accordingly, Defendants' motion is GRANTED as to this issue.

### V. CONCLUSION.

For the reasons stated above, the Thuluris cannot be held individually liable as

18

employers under WARN. Likewise, the Thuluris are not liable under ERISA as employers or as fiduciaries. Nuko is neither a successor nor alter ego of Rama Tech for purposes of ERISA or WARN. Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

                                      s/Marianne O. Battani
                                      MARIANNE O. BATTANI
                                      UNITED STATES DISTRICT JUDGE

Dated: December 9, 2005


**CERTIFICATE OF SERVICE**

    Copies of this Order were mailed to Kenneth J. Hardin, II, Brad A. Rayle, and G. Christopher Bernard on this date by ordinary mail and/or electronic filing.

                                        s/Bernadette M. Thebolt
                                        Deputy Clerk